Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EDGAR ANTONIO ACEVEDO DELGADO<br><br>Recurrido<br><br>V.<br><br>ROBERTO QUILES H/N/C QUILES AUTO SALES<br><br>Recurrente | TA2026RA00159 | *Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: CAG-2025-007331<br><br>Sobre: Compra Venta de Vehículos de Motor |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 12 de mayo de 2026.

El 4 de abril de 2026, compareció ante este Tribunal de Apelaciones, Roberto Quiles h/n/c Quiles Auto Sales (en adelante, Quiles o parte recurrente), por medio de *Solicitud de Revisión Judicial.* Mediante esta, nos solicita que revisemos la *Resolución Final* emitida y notificada el 12 de febrero de 2026, notificada el 13 de febrero de 2026, por el Departamento de Asuntos del Consumidor (en adelante, DACo). En virtud del aludido dictamen, el DACo declaró Con Lugar la *Querella* instada por Edgar Antonio Acevedo Delgado (en adelante, señor Acevedo Delgado o parte recurrida).

Por los fundamentos que adelante se exponen, se *confirma* la *Resolución* recurrida.

### I

El caso que nos ocupa tiene su génesis en una *Querella* interpuesta el 12 de septiembre de 2025 ante el DACO por el señor Acevedo Delgado en contra de la parte recurrente Roberto Quiles h/n/c Quiles Auto Sales.

En apretada síntesis, el recurrido alegó que, el 14 de agosto de 2025, adquirió el vehículo de motor Ford 150 del año 1916, con número de tablilla 186074 y número de serie 1FTEWICPIGFD12774. Para la adquisición de dicho vehículo, el recurrido aportó un depósito de $500.00, más el pago de $19,500.00. Arguyó que, desde que salió del concesionario recurrente, el vehículo se apagó y confrontó sendos desperfectos mecánicos, por los que tuvo que llevarlo a distintos mecánicos e incurrir en gastos de reparación. Con posterioridad, el 17 de septiembre de 2025, el recurrido enmendó la *Querella*, a los fines de añadir que, en el concesionario de autos no le informaron que el vehículo no tenía garantía y que luego de venderle el vehículo en cuestión, el vendedor de la parte querellada le informó que tenía que llevar a inspeccionar el vehículo. Consecuentemente, solicitó como remedio, la devolución del dinero.

El 30 de septiembre de 2025, el DACo citó a las partes para una Vista Administrativa para el día 3 de diciembre de 2025, a las 8:30am, en la Oficina Regional de Caguas. Subsiguientemente, el 6 de noviembre de 2025, el DACo le ordenó a la parte recurrente someter en el término de cinco (5) días, copia de la fianza vigente a la fecha de los hechos que motivaron la *Querella*.

Acaecidas ciertas incidencias procesales, innecesarias pormenorizar, y luego de celebrada la Vista Administrativa, el 12 de febrero de 2026, el DACo emitió la *Resolución* recurrida, la cual fue remitida a las partes el día siguiente. En la misma, el DACo hizo las siguientes determinaciones de hechos:

1. El 10 de agosto de 2025, el Querellante visitó el concesionario del Querellado, ubicado en el municipio de San Sebastián, Puerto Rico, con el propósito de inspeccionar un vehículo de motor usado, importado, marca Ford, modelo F-150, del año 2026, color negro tablilla 1135869 (en lo sucesito "el Vehículo) que había observado en una propaganda a través de una página de internet.

2. Luego de inspeccionar el Vehículo, sin realizar una prueba de manejo, el Querellante le entregó al

Querellado la cantidad de quinientos dólares ($500.00) por concepto de depósito, para reservarlo, en lo que solicitaba un préstamo personal para la adquisición de este.

3. El 14 de agosto de 2025, el Querellante, regresó al concesionario del Querellado y luego de una prueba de manejo, en la cual el Vehículo se apagó, suscribió un contrato con el Querellado para adquirir el Vehículo, por el cual pagó la cantidad de diecinueve mil quinientos dólares ($19,500.00).

4. El Querellado no inspeccionó el Vehículo, según requiere la Ley de Vehículos de Tránsito de Puerto Rico, antes de venderlo al Querellante.

5. El Querellado le informó al Querellante que el Vehículo no había sido inspeccionado y que le correspondía al Querellante, llevarlo a realizarle la correspondiente inspección.

6. El Querellado le solicitó al Querellante, además, que una vez recibiera el documento oficial de la inspección, se lo hiciera llegar para realizar los trámites correspondientes.

7. El Querellante cuestionó al Querellado por la falta de inspección, sin embargo, se llevó el Vehículo sin inspeccionar y lo llevó a un centro autorizado, en donde le realizaron la inspección, el 15 de agosto de 2025. El Querellante le envió Querellado la evidencia de que el Vehículo había sido inspeccionado.

8. Durante el transcurso del viaje de San Sebastián a su residencia en Caguas, el 14 de agosto de 2025, el Querellante pudo notar que el Vehículo estaba presentando problemas. Puesto que, cada vez que frenaba y no aceleraba el Vehículo, este se ahogaba y amagaba con apagarse.

9. Al día siguiente, la luz de "check engine" del panel del Vehículo se encendió y este comenzó a apagarse.

10. El Querellante llevó el Vehículo a un taller de mecánica, donde fue conectado a una maquina "scanner" para detectar fallos. La máquina indicó que había que cambiarle las bujías, la bobina, una manga y el conector de las bujías.

11. El Querellante compró las piezas y se llevó el Vehículo para su casa.

12. Posteriormente, el Querellante llevó el Vehículo a otro taller mecánico en donde le instalaron las piezas. El Vehículo continuó dando problemas.

13. El 2 de septiembre de 2025, el Querellante encendió el Vehículo y de inmediato se calentó.

14. El Vehículo fue llevado a un taller de mecánica, en donde se rompió otra manga, la cual se le cambió.

15. El 5 de septiembre de 2025, el Querellante encendió el Vehículo y de inmediato volvió a calentarse, rompió otra manga y la bomba de agua.

16. El Querellante dejó el Vehículo detenido en su residencia, hasta el presente.

17. El Querellante le reclamó al Querellado la devolución del dinero pagado. El Querellado se negó y le ofreció una ayuda de cortesía, la cual nunca se acordó entre las partes, en qué consistiría.

18. El Querellado no le entregó al Querellante el título del Vehículo, hasta el 10 de diciembre de 2025, durante la vista administrativa.

19. El 15 de septiembre de 2025, el Querellante radicó la querella en el Departamento, alegando en síntesis que le vendieron un Vehículo con desperfectos mecánicos, sin garantía y sin la licencia. Posteriormente, el 17 de septiembre de 2025, El Querellante enmendó la querella para incluir en sus alegaciones que no fue informado de la garantía del Vehículo, que el Vehículo no estaba rotulado con información y por último, luego de que el vendedor del Querellado le vendiera el Vehículo, le dijo que tenía que inspeccionarlo, a sabiendas que no puede vender un Vehículo sin inspeccionar. Por lo que, solicitó como remedio la cancelación del contrato, la devolución del dinero pagado.

Además, en dicha *Resolución* el DACo ordenó lo siguiente:

Se declara CON LUGAR la presente querella y se le ordena al Querellado, Roberto Quiles h/n/c Quiles Auto Sales, a que en el término de treinta (30) días, contados a partir de la notificación de la presente Resolución, proceda a entregar al Querellante, Edgar A. Acevedo Delgado, la cantidad de veinte mil dólares ($20,000.00). El Querellado debe hacer las gestiones, coordinando con el Querellante para pasar a recoger el Vehículo a su residencia. El Querellante por su parte debe tener el Vehículo a disposición del Querellado en la fecha y hora que acuerden el recogido. Del Querellado Roberto Quiles h/n/c Quiles Auto Sales incumplir con el pago dentro del tiempo concedido, el mismo comenzará a devengar el interés legal correspondiente.

Se refiere el expediente administrativo a la División de Protección al Consumidor para la imposición de multa al Querellado, a tenor con el Reglamento 7159 del 6 de junio de 2006, conocido como Reglamento de Garantías de Vehículos de Motor.

Se le advierte al Querellado, que el incumplimiento con lo ordenado puede dar base a la imposición de multas

administrativas de hasta $10,000.00 y que el pago de la referida multa, no le exime de cumplir con lo ordenado. Así también, se le advierte que, en caso de incumplimiento, el Departamento puede acudir al Tribunal en petición para hacer cumplir la orden.

El 3 de marzo de 2026, la parte recurrente presentó *Reconsideración.* Evaluada la misma, el 6 de marzo de 2026, el DACo emitió *Resolución* en Reconsideración, en la cual dispuso lo siguiente:

> El 13 de febrero de 2026 este Departamento notificó Resolución declarando Ha Lugar la Querella de epígrafe. El 3 de marzo de 2026 la parte querellada, Roberto Quiles h/n/c Quiles Auto Sales radicó *"Reconsideración"*. Evaluada la *"Reconsideración"* así como el expediente administrativo, la declaramos **No Ha Lugar**.

Inconforme con lo resuelto, la parte recurrente acudió ante este foro revisor mediante *Solicitud de Revisión Judicial,* donde esbozó los siguientes señalamientos de error:

> **Primer Error:**
> Erró el Juez Administrativo al imponer una obligación de garantía sobre un vehículo que, conforme a la orden de compra firmada por el propio querellante y al reglamento núm. 7159, expresamente no tiene garantía alguna por exceder las 100,000 millas.
>
> **Segundo Error:**
> Erró el Juez Administrativo al dictar resolución fundada en hechos materialmente incorrectos —año del vehículo (2026 en vez de 2016) y precio de compra ($20,000.00 en vez de $19,500.00)— lo que vicia la resolución en su totalidad por ausencia de base en el expediente administrativo.
>
> **Tercer error:**
> Erró el Juez Administrativo al declarar probados vicios ocultos sin prueba pericial ni documental técnica alguna, y sin considerar la admisión escrita del propio querellante de que conocía condiciones visibles del vehículo antes de comprarlo, lo que destruye el requisito esencial de desconocimiento en la acción de saneamiento.
>
> **Cuarto Error:**
> Erró el Juez Administrativo al incurrir en apreciación errónea y parcializada de la prueba, ignorando por completo la orden de compra firmada —la mejor evidencia del caso— y las contradicciones materiales del querellante durante el contrainterrogatorio, omisiones que vulneran el estándar de evidencia sustancial y el debido proceso.

**Quinto error:**
Erró el Juez Administrativo al ordenar la resolución del contrato sin ponderar que el querellante realizó reparaciones unilaterales en múltiples talleres notificando parcialmente al recurrente ni concederle la oportunidad reglamentaria de atender reclamación alguna, requisito *sine qua non* bajo la Regla 29.3 del Reglamento núm. 7159.

El 23 de abril de 2026, la parte recurrida presentó *Oposición a Recurso de Revisión Judicial*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. *Revisión de Determinaciones Administrativas*

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Vázquez et al. v. DACo*, 2025 TSPR 56, pág. 25, 216 DPR ___ (2025); *Katiria´s Café v. Mun. de San Juan*, 2025 TSPR 33, pág. 10, 215 DPR ___ (2025); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Katiria´s Café v. Mun. de San Juan*, supra; *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Hernández Feliciano v. Mun. Quebradillas*, supra. No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones

administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otro*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012).

Bajo este supuesto, la Sección 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias

administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra*;* pág. 89; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA § 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía,* supra; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía,* supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o

ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra.

Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.* págs. 90-91.

### B. *Facultades del Departamento de Asuntos del Consumidor*

El Departamento de Asuntos del Consumidor fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de asuntos del Consumidor*, 3 LPRA sec. 341. Este fue creado con el propósito primordial de vindicar e implementar los derechos del consumidor. Art. 3 de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 341b; *Martínez v. DACo*, 163 DPR 594, 600 (2004); *DACo v. Fcia. San Martin*, 175 DPR 198, 204 (2009). Esta ley, le impone al Secretario de DACo, "el deber ministerial de promover y velar por el cumplimiento *de todas* las leyes, las reglas, los reglamentos y las órdenes que afecten los intereses del consumidor". *Íd.* págs. 204-205. (Citas omitidas).

En sintonía con lo anterior, la referida ley le concede al Secretario del DACo varios poderes y facultades, entre estos, se encuentra el atender, investigar y resolver las queja y querellas que los consumidores presenten y servicios adquiridos o recibidos por parte del sector privado de la economía. Art. 6(c) de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 3418(e). Además, cuenta con la facultad de "poner en vigor, implementar y vindicar los

derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y **conceder los remedios pertinentes conforme a Derecho**". Art. 6(d) de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 3418(e) (énfasis suplido).

Conforme a los poderes delegados, el DACo aprobó el Reglamento de Procedimientos Adjudicativos del DACo, Reglamento 8034 del 14 de junio de 2021. Lo anterior, con el fin de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el DACo y así promover un procedimiento uniforme para su adjudicación. Regla 1 del Reglamento 8034, *supra*. El referido reglamento aplica a las investigaciones y a los procedimientos administrativos sobre querellas iniciadas por los consumidores o por el DACo. Regla 3 del Reglamento 8034, *supra*.

Por otro lado, con el fin de garantizar la seguridad, salud y bienestar de la comunidad para evitar que vehículos de motor defectuosos, de gran potencialidad de daño al conductor y otros, transiten por las vías públicas del país, fue creada la Ley de Garantías de Vehículos de Motor, Ley 7 de 24 de septiembre de 1979, según enmendada. *Exposición de Motivos* de la Ley 7 de 24 de septiembre de 1979, *supra*. Mediante este estatuto, se le delegó al DACo la tarea de proteger a los consumidores de vehículos de motor frente a los intereses del vendedor, distribuidor y manufacturero. *Ortiz Rolón v. Soler Auto Sales et al.*, 202 DPR 689, 697 (2019); *Exposición de Motivos* de la Ley 7 de 24 de septiembre de 1979, *supra*.

La Ley 7 de 24 de septiembre de 1979, *supra*, además tiene como propósito proteger al consumidor de vehículos de motor nuevos y usados en Puerto Rico, asegurándole que los vehículos de motor que adquiera cuenten con la misma garantía de fábrica que

el fabricante o manufacturero les otorga a esos vehículos en el país donde se manufacturen, independientemente del lugar donde y de quien el consumidor haya adquirido tal vehículo. 10 LPRA sec. 2053. Así, le impone al fabricante o manufacturero de vehículos de motor la responsabilidad de honrar las garantías de fábrica de estos vehículos, y al distribuidor o vendedor la obligación de brindar al consumidor el servicio de garantía de fábrica en Puerto Rico. 10 LPRA sec. 2057. La Ley 7 de 24 de septiembre de 1979, *supra*, dispone que, el fabricante o manufacturero será responsable por aquellos daños que causen los defectos de fabricación, diseño, ensamble o manufactura de los vehículos de motor por él, fabricados o manufacturados. 10 LPRA sec. 2060.

En virtud de este estatuto, el DACo adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento 7159 del 6 de junio de 2006. *Ortiz Rolón v. Soler Auto Sales et al*, supra, pág. 697. Mediante este, el DACo buscó prevenir las prácticas ilícitas en las ventas de vehículos de motor, y así proteger a los consumidores al exigir que estos sean seguros y sirvan para los propósitos por los cuales fueron adquiridos. *Íd.*; Véase la Regla 2 del Reglamento 7159, *supra*. Según la Regla 4 del Reglamento 7159, *supra*, este deberá ser interpretado liberalmente a favor del consumidor.

La Regla 26 del Reglamento 7159, *supra*, dispone una prohibición de venta sobre los vehículos de motor usados sin garantía. Asimismo, exige que todo vendedor de vehículos de motor usados conceda garantía en piezas y mano de obra basada en el millaje recorrido y en una escala específica. Regla 26.2 del Reglamento 7159, *supra*. El comprador también tendrá derecho a que el vehículo sea inspeccionado por un mecánico de su preferencia, antes de comprar el vehículo usado. Regla 26.3 del Reglamento 7159, *supra*.

Por otro lado, el aludido Reglamento expone que, en aquellas situaciones en las que envuelven riesgos inminentes a la seguridad de los ocupantes del vehículo, deberá ser recibido para reparación al momento en que el consumidor lo solicite, durante horas laborables. Regla 29.1 del Reglamento 7159, *supra*.

La Regla 29.3 del Reglamento 7159, *supra*, plantea lo siguiente:

> El Departamento, podrá a opción del consumidor, decretar la resolución del contrato o reducir proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso.

### C. Los Contratos en General

Según es sabido, las obligaciones nacen de la ley, los contratos, los cuasicontratos, los actos ilícitos, de los actos u omisiones en las que interviene culpa o negligencia, y de cualquier otro acto idóneo para producirlas, conforme el ordenamiento jurídico. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Nuestro Código Civil define el contrato como aquel "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma provista por ley, para crear, regular modificar o extinguir obligaciones". Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). El contrato se perfecciona desde que las partes manifiestan su consentimiento sobre el objeto y la causa, es decir, cuando median el objeto, consentimiento y causa. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022).

No obstante, lo anterior no aplica en los casos en que sea requerido el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771. En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, que faculta a las partes a contratar o no hacerlo con determinada persona, así como pactar los términos y condiciones que tengan por conveniente. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Pérez Rodríguez v. López Rodríguez et at.,* supra, pág. 187; *Burgos López et al. v. Condado Plaza,* 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III,* 136 DPR 157 (1994). Sin embargo, tal libertad no es infinita, puesto que, las partes podrán acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Burgos López et al. v. Condado Plaza,* supra, págs. 7-8; *Oriental Bank v. Perapi,* 192 DPR 7, 15 (2014). Una vez se perfecciona el contrato, lo acordado en este tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 9754. Finalmente, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR,* 143 DPR 627 (1997).

Esbozada la norma jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla al recurso ante nos.

**III**

En su *primer señalamiento de error,* la parte recurrente nos plantea que, erró el Juez Administrativo al imponer una obligación de garantía sobre un vehículo que, conforme a la orden de compra firmada por el propio querellante y al Reglamento núm. 7159,

expresamente no tiene garantía alguna por exceder las 100,000 millas. No le asiste la razón.

Luego de examinar minuciosamente la *Resolución* emitida por el DACo, diferimos de la apreciación de la parte recurrente, a los efectos de que el ente administrativo le impuso una obligación de garantía improcedente en derecho. Conforme se desprende de la Resolución recurrida, si bien en la exposición del derecho, se hace una mención general de la garantía, el DACo fundamentó determinación, eminentemente, en el incumplimiento de la parte recurrente con la Regla 31 del Reglamento de Garantías de Vehículos de Motor, Reglamento 7159, *supra*, que le exige al vendedor inspeccionar el vehículo de motor, según lo establece la Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como *Ley de Vehículos y Tránsito de Puerto Rico*[1].

En lo particular, la aludida *Resolución* lee y citamos:

> De la prueba aquilatada se desprende que, el Querellado, con posterioridad a que las partes suscribieran el contrato de compraventa del Vehículo, le requirió al Querellante que le realizara la inspección que exige el DTOP y la [L]ey de [T]ránsito de Puerto Rico, al Vehículo. Lo anterior, a sabiendas o debió haber sabido el Querellado, que no podía formalizar la compraventa del Vehículo hasta tanto lo inspeccionara y no podía delegar tal obligación ineludible del Querellado al Querellante. Mucho menos, podía permitir que el Querellante manejara el Vehículo fuera del concesionario, por las vías públicas de Puerto Rico, de manera ilegal. Tal conducta implica desconocimiento total del Querellado de las condiciones del Vehículo, más aún, cuando este es un Vehículo importado y según declaró el propio Querellado, recién llegado a Puerto Rico. El Querellado, al realizar la entrega del Vehículo al Querellante, para que este lo manejara desde San Sebastián hasta Caguas, y, requiriéndole al Querellante que llevara el Vehículo a inspeccionar, actuó de manera desafortunada, irresponsable y en

---

[1] Específicamente, la Regla 31 del aludido reglamento dispone:
No se venderá ningún vehículo de motor usado sin que:

    a.   Haya pasado la inspección que requiere la Ley de Vehículos y Tránsito de Puerto Rico.

    b.   Su velocímetro y odómetro estén trabajando satisfactoriamente y se verifique que no han sido alterados y que tenga el "vin number" en todas las piezas con respecto a aquellos modelos y marcas de vehículos de motor que designe de tiempo en tiempo el gobierno federal.

clara violación al Reglamento de Garantías de Vehículos de Motor y la Ley de Tránsito de Puerto Rico. Las declaraciones realizadas durante la vista administrativa del representante del Querellado, el Sr. Alex Quiles, para justificar que le requiriera al Querellante que realizara la inspección del Vehículo, con posterioridad a la compraventa, son tan desafortunadas e irresponsables como sus propios actos. No existe justificación alguna, ni excepción a la Regla 31 del Reglamento de Garantías de Vehículos de Motor y la Ley de Tránsito de Puerto Rico, para que un concesionario venda un vehículo de motor a un consumidor sin que previo a la entrega le realice la correspondiente inspección. El citado Reglamento en su Regla 31 es tajante, claro y contundente con su prohibición, no da margen a excepciones, ni justificaciones. Las consecuencias de las actuaciones del Querellado pudieron haber sido tan diversas como trágicas. Mas aún, cuando la distancia recorrida por el Querellante fue extensa y el Vehículo estaba confrontando problemas. De haber ocurrido un accidente, que afectara la integridad física del Querellante y de otros conductores con vehículos autorizados a transitar por las vías de rodaje de Puerto Rico, hubiesen quedado desprovistos de las coberturas que brinda ACCA, así, como la reclamación al seguro por los daños que pudieron haber sufrido los vehículos involucrados. Además, de haber intervenido un oficial de tránsito de la Policía de Puerto Rico con el Querellante, mientras conducía el Vehículo, en violación a la Ley de Tránsito, se hubiese expuesto a multas, remoción de tablilla y hasta confiscación del Vehículo. De ahí, la importancia del estricto cumplimiento de la referida [R]egla 31 Reglamento de Garantías de Vehículos de Motor y la Ley de Tránsito de Puerto Rico. Lo que el Querellado pretendía validar con sus expresiones, es precisamente lo que la [L]ey de [T]ránsito y el Reglamento de garantías de Vehículos de Motor pretende evitar. Es decir, que un vehículo de motor no salga de un concesionario de manera ilegal y sin ninguna garantía de protección para el consumidor que acaba de adquirir el vehículo y los demás conductores que legítimamente transitan por las carreteras de Puerto Rico. Puesto que, es ilegal conducir un vehículo de motor por las vías públicas de Puerto Rico, sin que haya sido debidamente inspeccionado y certificado por el DTOP.

Por otro lado, el Querellante no ha podido usar y disfrutar el Vehículo, por lo que, tampoco cumple con el propósito para el cual fue adquirido, pues lo tiene detenido en su residencia. Por último, el Querellado actuó en violación de la Regla 8 del Reglamento de Garantías de Vehículos de Motor de Puerto Rico, toda vez que, le hizo entrega de los documentos que acreditan la titularidad al Querellante, el 10 de diciembre de 2025, durante la vista administrativa. Lo que implica, una dilación de más de ochenta (80) días de la fecha límite que tenía para entregarlos, es decir, el 13 de septiembre de 2025, toda vez que, la compraventa se realizó el 14 de agosto de 2025.

Por lo que, el Querellado incumplió con su obligación y debemos concluir que incurrió en violación de las citadas disposiciones del Código Civil de Puerto Rico, así como del Reglamento de Garantías de Vehículos de Motor, por lo que se declara Ha Lugar la querella de epígrafe.

Por otro lado, el DACo también concluyó que, la parte recurrente le hizo entrega al recurrido de la documentación acreditativa de la titularidad del vehículo durante la vista administrativa, por lo cual, incumplió con la Regla 8 del Reglamento núm. 7159, *supra*[2]. Más importante aún, determinó que, debido a los desperfectos confrontados, el vehículo vendido no cumplió con el propósito para el cual fue adquirido. Lo anterior, en total contravención a lo establecido por el Código Civil de Puerto Rico, en materia contractual.

En su *segundo señalamiento*, la parte recurrente arguye que, erró el Juez Administrativo al dictar resolución fundada en hechos materialmente incorrectos —año del vehículo (2026 en vez de 2016) y precio de compra ($20,000.00 en vez de $19,500.00)— lo que vicia la resolución en su totalidad por ausencia de base en el expediente administrativo.

Somos del criterio que el mero error tipográfico respecto al año del vehículo en controversia, por tratarse de un error de forma subsanable, no vicia de nulidad la resolución recurrida. Por otro lado, la parte recurrente intenta persuadirnos de que el DACo incidió al imponerle la devolución a la parte recurrente de la suma de $20,000.00 cuando el precio alegadamente pagado fue de $19,500.00. Ahora bien, de la prueba desfilada, quedó probado a satisfacción del Juzgador Administrativo, que la parte recurrida le

---

[2] En particular, la Regla 8 del Reglamento Núm. 7159 establece lo siguiente:

Todo vendedor al detal de un vehículo de motor someterá al Departamento de Transportación y Obras Públicas toda la documentación exigida por ley para su inscripción dentro de los treinta (30) días siguientes a la fecha de venta. Todo cesionario del contrato de compraventa de un vehículo de motor responderá solidariamente con el vendedor de esta obligación.

entregó a la parte recurrente la suma de $500.00 por concepto de depósito para reservar el vehículo. Consecuentemente, no incidió el ente administrativo al ordenarle a la parte recurrente el pago a la parte recurrida de $20,000.00.

En su *tercer y cuarto señalamientos de error*, la parte recurrente señala que, incurrió en error el Juez Administrativo al declarar probados vicios ocultos sin prueba pericial ni documental técnica alguna, sin considerar la admisión escrita del propio querellante de que conocía condiciones visibles del vehículo antes de comprarlo, lo que destruye el requisito esencial de desconocimiento en la acción de saneamiento; y que incurrió en apreciación errónea y parcializada de la prueba, ignorando por completo la orden de compra firmada —la mejor evidencia del caso— y las contradicciones materiales del querellante durante el contrainterrogatorio, omisiones que vulneran el estándar de evidencia sustancial y el debido proceso.

En su *quinto señalamiento*, la parte recurrente señala que, erró el Juez Administrativo al ordenar la resolución del contrato sin ponderar que el querellante realizó reparaciones unilaterales en múltiples talleres notificando parcialmente al recurrente ni concederle la oportunidad reglamentaria de atender reclamación alguna, requisito *sine qua non* bajo la Regla 29.3 del Reglamento núm. 7159, *supra*.

Por estar estrechamente relacionados los señalamientos de error antes mencionados, los discutiremos de forma conjunta.

Es menester destacar que, a pesar de que la parte recurrente ataca la apreciación de la prueba que hizo el Juez Administrativo, lo cierto es que omitió someter ante esta Curia una transcripción de la prueba desfilada durante la Vista Administrativa. Tal omisión nos impide pasar juicio sobre la apreciación de la prueba. Ante la ausencia de una transcripción de la prueba oral, de conformidad a

la Regla 76 de nuestro Reglamento, se considera renunciado todo señalamiento de error, cuya adjudicación dependa, parcial o totalmente, de una evaluación de la prueba oral.

Tal como esbozamos previamente, las determinaciones de las agencias administrativas suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[3]

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[3] *Katiria's Café v. Mun. de San Juan*, supra; *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Hernández Feliciano v. Mun. Quebradillas*, supra.